MARY E. SCHLEY, Executrix of JAMES HIGGINS *vs.*
WILLIAM K. MERRITT and GEORGE A. MERRITT,
trading as WILLIAM K. MERRITT & Co.

*Competency of the Drawer of a Note to Testify for the Plaintiff in
a suit thereon by the Endorsee against the Endorser— When
notice of Demand on the Maker of a note, and of his Default,
is not necessary to bind the Endorser.*

In a suit upon a promissory note by the endorsees against the executrix of the
endorser, the maker of the note is a competent witness for the plaintiffs, to
prove that at the time the deceased endorsed the note, he was indebted to
the witness in an amount exceeding the amount of the note, and that the
witness owed the plaintiffs the sum mentioned in the note, and that it not
being convenient for the deceased to pay the money he owed the witness, it
was agreed between them that the deceased should endorse the note to be
given to the plaintiffs, and that he would pay it at maturity.

In an action against an executrix, by the endorsees of a promissory note,
drawn payable to the order of her testator, and by him endorsed, proof of
notice to him of demand upon, and non-payment by, the maker of the note,
is not necessary to fix the responsibility of the defendant, it being shown
that the deceased endorser agreed with the maker to pay the note at matu-
rity absolutely as his own indebtedness.

APPEAL from the Court of Common Pleas.

This was an action brought by the appellees against
the appellant, on a promissory note drawn by George W.
P. Smith, for $229.39, dated Baltimore, the 4th of Octo-
ber, 1869, and payable six months after date, to the
order of James Higgins, the appellant's testator, and by
him endorsed. ·

*First Exception.* The plaintiffs to sustain the issues on
their part, offered in evidence the note sued on, and the
protest, and proved the making and endorsement of the
note, the death of Higgins at Barnum's Hotel, in the

City of Baltimore, in the latter part of March, 1870, and that the defendant qualified as executrix in September of the same year, in the Orphans' Court of Anne Arundel County. The plaintiffs offered evidence tending to show that the deceased was at the time of his death a resident of the City of Baltimore, and had been for many years previous to his death; and then offered to prove by Smith, the maker of the note, that Higgins at the time he endorsed the note, was indebted to him, Smith, in the sum of two hundred and fifty dollars, and that he, Smith, owed the plaintiffs the sum mentioned in the note, and it not being convenient for Higgins to pay the money he owed him, it was agreed between said Smith and Higgins, that he, Higgins, should endorse this note to be given to the plaintiffs, and Higgins promised him, Smith, that he would pay the said note at maturity, and that he, Smith, need give himself no trouble about it. The defendant objected, and insisted that Smith was not a competent witness to prove said facts, but the Court, (GAREY, J.,) overruled the objection, and permitted the witness to give the evidence to the jury. The defendant excepted.

*Second Exception.* The plaintiffs further proved by George W. P. Smith, that a short time before the note sued on became due, he called upon Higgins and informed him that said note would soon be due, and he, Smith, expected him, Higgins, to pay it, and Higgins replied that he need give himself no further trouble about it, that he would pay it before it was due; and offered in evidence by George E. Sangston, that he was the Notary who protested the note, and that he gave the notice of protest and non-payment as stated in the protest; that at the time he knew that Higgins was dead— that he had heard that he died at Barnum's Hotel; that he believed that Higgins was a resident of Baltimore City at the time of his death; that he had seen his name on a sign at No. 5 St. Paul Street; that Higgins

had an office at ·that place for business; that he was a chemist and mineralogist; that said place was about a hundred yards from the office of witness. The defendant offered a variety of evidence, tending to show that the deceased was a resident and citizen of Anne Arundel County at the time of his death, and that he always claimed a right to vote in said county, and that he had stated on various occasions that he did vote in said county at popular elections.

Thereupon the plaintiffs offered two prayers, the first of which is given in the opinion of this Court, and the second is as follows:

2nd. If the jury find that the note offered in evidence was made by George W. P. Smith, and that James Higgins, the deceased, endorsed the same as offered in evidence, and that before the note became due, Higgins died, and no letters of administration were granted on his estate until long after said note was due; and if the jury shall further find that the said James Higgins, at the time of his death, and long before, lived at Barnum's Hotel, in the City of Baltimore, and had an office for business in said city, and had for a long time been habitually in the City of Baltimore, in and about his said place of business, and in other places; and if they shall further find that Geo. E. Sangston, notary public, having a knowledge of these facts, and believing that the residence of said Higgins was in Baltimore City when said note became due, made demand for payment, and gave notice of protest, as stated· in the protest offered in evidence, the plaintiffs are entitled to recover.

And the defendant prayed the Court to give the jury the following instructions:

1. That there is in this case, no sufficient evidence of notice to the defendant of the presentment and non-payment of the note sued on.

2. That if the jury shall find from the evidence that

the note sued on in this case, was passed by the maker to the plaintiffs on account of a debt due by him to them, then there is no excuse shown for the want of notice to the defendant, and the plaintiffs cannot recover

3. That if the jury shall find from the evidence, that the office of the notary who made the protest, was a short distance (not more than a few hundred yards) from the office occupied and used by James Higgins, deceased, at the time of his death, then the notice of protest is insufficient, and the plaintiffs cannot recover.

4. That there is no sufficient evidence in this case to show diligence on the part of the notary in making inquiry as to the residence of the deceased, and that it was necessary to leave or send a notice of presentment and non-payment to the last place of residence or business of the deceased, and directed to him, and for want of such notice so sent, the plaintiffs cannot recover.

The Court granted the plaintiffs' first prayer, and rejected their second, and granted the first prayer of the defendant, and rejected the rest. The defendant excepted to the rejection of their second, third and fourth prayers, and to the granting of the plaintiffs' first prayer. And the verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*Alex. B. Hagner*, and *Wm. H. Tuck*, for the appellant.

But for the Act of 1864, ch. 109, Smith was incompetent, on the ground of interest, because, if he could succeed in fastening this claim upon Higgins, as the party primarily liable on a note made for his accommodation, the executrix of Higgins could never recover the amount from Smith, after paying the judgment to the appellees. If, as between Smith and Higgins, the latter

agreed that he would pay the note, as a credit on his indebtedness to Smith, there would be no ground on which Higgins could recover it back. And if the appellees had recovered judgment against Smith, the latter, as soon as Higgins paid their judgment, might claim to have the judgment against himself entered "satisfied," and not for the use of Higgins, which might have been done, if Higgins had been merely liable as indorser for Smith's accommodation.

And if there is no judgment against Smith, and the appellant is made to pay the claim to the appellees, she can only proceed against Smith, by offering the record in evidence, from which it would appear that Higgins was himself the real debtor, as between him and Smith. Hence, the witness had a direct interest in the result of the suit.

Where the holder sues the indorser, and does not sue the maker, the indorser can only recover against the maker for the amount of the judgment paid by him, by suing the maker himself for money paid, and offering the judgment in evidence; for the note being merged in the suit against the indorser, or at least out of his control, he could not sue as holder of the note by indorsement from the appellees. If, then, the appellant is made to pay this debt, and should seek to recover from Smith, the maker of the note, the very evidence which she must offer, would shew that a jury had found that Higgins was himself the real debtor, as between Smith and himself, and that she had no ground of action to recover the money back. Hence, Smith had a direct interest in the result of the suit against the appellant. It is for this reason that an indorser is not a competent witness for the holder of a note in a suit against the maker or prior indorser, for if made to pay himself, he would be entitled to an assignment of the judgment against all prior parties to the note. *Owens vs. Collinson*, 3 *G. & J.*, 25 ; *Funk's Lessee vs. Kincaid and Murdock*, 5 *Md.*, 404.

Under the Act of 1868, ch. 116, Smith was clearly incompetent as a witness. *Miller vs. Motter*, 35 *Md.*, 432.

The Court erred in granting the plaintiffs' first prayer. The alleged agreement was not made with the *plaintiffs*, and they were not entitled to recover upon it. *Price vs. Easton*, 24 *Eng. C. L R.*, 96.

The alleged indebtedness from Higgins to Smith, was not *extinguished.* The plaintiffs had not agreed to release Smith, and Smith had not released Higgins. If Higgins, *by parol*, agreed to pay Smith's debt to the plaintiffs, the agreement was void under the Statute of Frauds. *Owings vs. Owings*, 1 *H. & G.*, 484.

It was necessary to protest the note, and the notice was insufficient in this case. *French vs. Bank of Columbia*, 4 *Cranch*, 141 ; *Willis vs. Green*, 5 *Hill*, 232 ; *Mathewson vs. Strafford Bank*, 45 *New Hamp.*, 107 ; *Cory vs. Scott*, 3 *B. & Ald.*, 619 ; *Byles on Bills*, 183, 203, 297 ; *Smith's Mercantile Law*, 244.

*William S. Waters*, for the appellees.

The notice given was under the circumstances sufficient. *Sascer vs. Whitely & Stone*, 10 *Md.*, 100--104 ; *Bell vs. The Hagerstown Bank*, 7 *Gill*, 229 ; *Boyd vs. City Savings Bank*, 15 *Grat.*, 501 ; *Boyd vs. Orton*, 16 *Wis.*, 495 ; *Staylor vs. Ball & Williams*, 24 *Md.*, 196 ; *Moore vs. Hardcastle*, 11 *Md.*, 490 ; *Tate vs. Sullivan*, 30 *Md.*, 470 ; *Linderman's Executors vs. Guldin, et al.*, 34 *Penn.*, 54.

There was under the circumstances no notice required. *Walters & Co. vs. Munroe*, 17 *Md.*, 155 ; *Lewis vs Kramer and Rahn*, 3 *Md.*, 291; 3 *Kent's Comm.*, 113 ; *Story on Promissory Notes*, secs. 22, 268, 281 *and* 357 ; *Bond, et al. vs. Farnum*, 5 *Mass.*, 170 ; *Mechanics Bank vs. Griswold*, 7 *Wen.*, 168 ; *Sharp vs. Bailey*, 9 *B. & C.*, 44.

BARTOL, C. J., delivered the opinion of the Court.

This suit was instituted by the appellees to recover from the appellant, the amount of a promissory note,

drawn by George W. P. Smith, and endorsed by James Higgins the appellant's testator.

The defence was, that there was not sufficient notice of the dishonor of the note, to bind the appellant ; and the Court below in refusing the second prayer of the appellees, and granting the first prayer of the appellant, ruled that question in her favor ; it does not, therefore, properly arise on this appeal, and is not material to be decided.

The bills of exceptions present two questions for our decision :

First.—Whether Smith, the drawer of the note, was a competent witness for the appellees, to prove the facts stated in the *first* bill of exceptions, and *second*; whether the facts testified to by him, and stated in the appellees' first prayer, were sufficient to bind Higgins' executrix to pay the note, without notice of demand and non-payment.

First.—The competency of the witness *Smith* does not depend in any manner upon the construction of the Act of 1868, ch., 116. In a suit upon a promissory note by the endorsee against the endorser, the drawer has always been held to be a competent witness for the plaintiff, not having any interest in the event of the suit which would disqualify him ; his testimony could not tend in any manner to exonerate himself ; for he still remains liable to the holder of the note ; and is answerable over to the endorser, in case judgment has been recovered against the latter, and paid by him. No authorities need be cited for this familiar rule of evidence ; it was conceded by the appellant's counsel in the argument. But it was contended that the witness was incompetent to testify to the particular facts enumerated in the exception ; because it is supposed they tended to relieve himself from his primary liability upon the note, and to fix it upon Higgins the endorser. Such however, could not in our opinion, be the effect of his testimony. If the judgment

recovered against the appellant in this case be paid by her, she would have a right of action against the witness, as drawer of the note; the judgment would be evidence of his liability, and fix its amount; and in a suit against him, he could not avail himself for his defence, of the testimony given by him in the present suit, but would be compelled to estabish his defence by independent, legal and competent testimony.

A question very similar to this, arose in *Bank of Columbia vs. Magruder*, 6 *H. & J.*, 172, where objection was made to the competency of *George Magruder*, the drawer of the note, as a witness for the plaintiff in a suit by the endorsee against the administratrix of the endorser.

The testimony offered by the witness was " that at the time the note was drawn and endorsed, the intestate was indebted to him (the maker) in a large sum of money, which though not exactly liquidated between them, was believed by them both to be fully equal to the amount of the note, and that it was agreed between them that the note should be offered for discount at the Bank of Columbia, and the proceeds taken by the witness on account of the debt so due to him by the intestate ; and that the intestate should have all the time to pay the note that the bank would allow him."

The Court decided that the witness was competent to give the testimony offered. In noticing the objection, *Judge Earle* said, (p. 178,) "Should the case be established on his testimony against the administratrix, and the principal, interest and costs recovered of her, she will have her remedy against him as drawer, and it is not easy to perceive how the evidence given by him, or the verdict founded on it, could any way benefit him in the defence he may please to set up to her action. If the account he has spoken of, is used in bar of her suit, it must be supported by competent testimony, wholly

unconnected with his narrative concerning the original negotiation between him and the endorser; and he can have no advantages in such defence, which he would not have in an action instituted against the administratrix on the same account. A recovery in this cause against the administratrix will carry the costs, and as far as they go, will augment her demand against *George Magruder*; and in this view, he may be said to be a witness swearing against his interest."

We consider this reasoning as a complete answer to the objection now urged to the competency of the witness Smith, and therefore, affirm the ruling of the Court below, in the first bill of exceptions.

2d. By the appellees' first prayer, which was granted, the jury were instructed, " that if they should find, that the note offered in evidence was made by Smith, and endorsed by Higgins, and that at the time the note was made and endorsed, Higgins was indebted to Smith in an amount larger than the amount named in the note, and in consideration of said indebtedness, and for the purpose of paying the same, in whole or in part, it was agreed by Higgins with Smith, that said Higgins should pay said note to the holder thereof, unconditionally, as his own indebtedness; then no notice of demand and protest of said note, is necessary to fix the responsibility of the defendant in this action."

We find no error in this instruction. The question whether there was evidence proper to be submitted to the jury, to support the facts stated as the hypothesis of the prayer, is not an open question for the appellant in this Court. Not having been specifically made in the Court below, as required by rule 4, (29 *Md.*, 2,) the appellant is precluded from making it in this Court.

There can, we think, be no well founded objection to the proposition of law announced by the prayer.

It is unnecessary to examine the several cases cited at

the bar involving the question of what particular facts and circumstances have been held sufficient, or insufficient to excuse the want of due demand and notice to bind the endorser. The present case is free from difficulty on this point. Judge STORY in his work on Promissory Notes sec. 357, says: "An original agreement on the part of the endorser, made with the maker or other party at all events to pay the note at its maturity," renders such notice unnecessary. This case falls directly within that rule; for the jury were required to find " that Higgins agreed to pay the note to the holder thereof, unconditionally as his own indebtedness." The effect of such an agreement, is that the endorser thereby agrees to become the principal debtor, and in such case, notice is not required to bind him. The object and reason for requiring notice to the endorser, is to enable him to secure himself by proceeding against the drawer; but where, as between them, no such right exists, the endorser is not entitled to notice.

It is not necessary that the agreement should be made with the endorsee; the question of want of privity does not arise here, as in the case of *Price vs. Easton*, 24 *E. C. L.*, 93, cited by appellant's counsel. Here the suit is not based upon the alleged agreement between Higgins and Smith; but that is relied on only as evidence to show the true relations between the drawer and endorser, for the purpose of showing that the latter was not entitled to notice of demand on the drawer, and non-payment of the note. Nor is it obnoxious to the objection that it varies or contradicts the terms of the written contract as expressed by the note; as was the case in *Free vs. Hawkins*, 8 *Taunton*, (4. *E. C. L.*, 31,) also cited by appellant's counsel.

In the opinion delivered by GIBSON, C. J., in *Cramer vs. Sanford*, 4 *W. & S.*, 328, cited by appellant, the learned judge expresses in a few terse and pointed words

the true rule governing cases of this kind. He says, (p. 331,) "The true criterion seems to be the obligation to take up the note. When that remains with the maker, it continues to be the duty of the endorsee to apprize the endorser of the maker's default; where it has devolved on the endorser himself, he needs no notice."

That obligation depends upon the true relations between the maker and endorser; and where the latter has agreed to pay the note at maturity, absolutely as his own indebtedness; then he is denied the right to require that demand should first be made upon the maker, and that he should have notice of his default.

*Judgment affirmed.*